UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| NAMAIRE Q. ANDREWS, ) | |
| ) | |
| Plaintiff, ) | No. 6:21-CV-45-KKC-HAI |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| JAILER JAMIE MOSLEY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court here addresses Defendants' two unopposed motions for summary judgment (D.E. 78, 79) and Plaintiff Namaire Q. Andrews's motion to dismiss this matter without prejudice (D.E. 82).[1]

## I. Background

Andrews brought this *pro se* civil rights action under 28 U.S.C. § 1983 in January 2021. D.E. 1. At the time, he was a pretrial detainee at the Laurel County Correctional Center ("LCCC"). *Id*. Andrews is now a federal inmate at FCI Butner Medium in North Carolina. The gist of the complaint is that Andrews suffered a stroke less than a month after arriving at LCCC from another facility. There is no dispute that, on the morning of September 15, 2020, Andrews's cellmates requested medical attention after he woke up and they could tell something was wrong. At first, Andrews was placed in isolation for having snorted an unknown amount of suboxone. On September 17, he was taken to the local hospital and was determined to have suffered a stroke. It

---

[1] The federal inmate website lists Plaintiff's name as Namaire Quitez Andrews.

1

is undisputed this was Andrews's first stroke. Andrews had a known history of heart disease, and he was given Plavix and Aspirin each day at LCCC leading up to the day of the stroke. Both medications lower the risk of heart attack, stroke, and blood clots. Andrews argues he should have been prescribed the blood thinner Coumadin, which would have prevented the stroke. He testified at his deposition that this is his only claim. D.E. 79-2 at 5.[2] The Court interprets the Complaint as alleging deliberate indifference against Edith Hensley, the nurse in charge of his medical care. Additionally, Andrews appears to bring a *respondeat superior* claim against the jailer, Jamie Mosley. An additional named defendant was previously dismissed. D.E. 4, 5

The Court has previously remarked on the difficulty Andrews has faced in litigating this matter due to the debilitating effects of the stroke. The record also reflects the diligent assistance of a jailhouse lawyer. Andrews has requested appointment of counsel. And the Court looked into this possibility but was unable to find a lawyer to represent Andrews. Nevertheless, Andrews's filings are sufficient to reveal the nature of his claim. And Andrews was successfully deposed. The factual record and legal arguments are here sufficiently developed, despite Andrews's post-stroke difficulties.

Defendants' motions for summary judgment stand unopposed. Andrews was warned repeatedly that failure to respond to a motion may provide grounds for granting the motion. D.E. 68, 76, 81. Rather than respond, he moved instead to dismiss this action without prejudice in hopes of pursuing his claim again later. D.E. 82.

The Court is, and has been, sympathetic to Plaintiff's difficulties in prosecuting this case post-stroke. Nevertheless, the record as it stands, including Plaintiff's deposition and records from

---

[2] Citations to page numbers in the record are to the blue numbers generated by ECF.

LCCC, make it clear that Plaintiff never had a viable deliberate-indifference claim against Defendants.

## II. Andrews's Failure to Respond to Defendants' Motions

When a party "fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." *Scott v. Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (table); *see also Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defense motion to dismiss is grounds for the district court to assume that opposition to the motion is waived). Joint Local Civil Rule 7.1(c) also provides that a failure to file a response in accordance with a court's deadline may be grounds for granting a motion for summary judgment.

Here, Andrews has filed no timely response nor a request for an extension of the May 17, 2023 deadline. *See* D.E. 68, 76, 81. The Court may therefore grant Defendants' motions based on the lack of response.

However, in granting a motion that will dispose of a claim, courts should make certain that a moving party has satisfied its burden under the Federal Rules. "[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). Here, the undisputed facts show Defendants are entitled to judgment as a matter of law.

## III. Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party does not

3

need his own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). "A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts." *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

The Court reviews all the evidence presented by the parties in a light most favorable to the responding party and draws all reasonable factual inferences in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, that party's evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

### IV. Uncontested Facts

Defendants point to several undisputed material facts established by the exhibits accompanying their motions (which include Andrews's deposition testimony). These include:

- When Andrews arrived at LCCC on August 21, 2020, LCCC received a Prisoner in Transit Medical Summary. This Summary documented Andrews's medical problems, including chronic hypertension, an implanted defibrillator, and

    myocardial infarction. Andrews also came with a list of prescribed medications, which included clopidogrel ("Plavix") 75mg and Aspirin 81mg. Both are medications that lower the risk of stroke, heart attack, and blood clots.

- Nurse Hensley gave Andrews a health screening and critical care consultation upon intake. Andrews stated he takes blood thinners. He was instructed to immediately report any untoward symptoms or worsening of his condition.

- LCCC gave Andrews Plavix 75mg and Aspirin 81mg every day from August 22 to September 14, 2020. He reported no untoward symptoms or worsening of his condition during this period.

- Andrews never failed to or refused to take his provided medication, which he recalled (roughly consistently with the Medical Summary) as being ten different pills.

- On September 15, Andrews's cell mates reported to medical staff that Andrews "woke up and could not talk and something was wrong with him." Andrews was believed to have snorted oxycodone. Nurse Hensley placed him in medical observation and treated him with prednisone and dexamethasone injections.

- On September 17, LCCC sent Andrews to the local hospital's emergency room for evaluation. He was determined there to have suffered a stroke.

- This was Andrews's first stroke.

The sources of these facts are laid out in Defendants' summary-judgment briefs. And this includes citations to Andrews's deposition statements, in which he took no issue with these facts.

5

# V. Analysis

To survive summary judgment on a deliberate indifference claim, a plaintiff must present evidence from which a reasonable jury could find that (1) that the detainee had an objectively serious medical need; and (2) that the defendant's action (or lack of action) was intentional (not accidental) and she either (a) acted intentionally to ignore the detainee's serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to the detainee. *Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 607 (6th Cir. 2022). Stated somewhat differently:

> [A] plaintiff must satisfy three elements for an inadequate-medical-care claim under the Fourteenth Amendment: (1) the plaintiff had an objectively serious medical need; (2) a reasonable officer at the scene (knowing what the particular jail official knew at the time of the incident) would have understood that the detainee's medical needs subjected the detainee to an excessive risk of harm; and (3) the prison official knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk.

*Trozzi v. Lake Cnty., Ohio*, 29 F.4th 745, 757-58 (6th Cir. 2022) (rephrasing *Greene*).

Defendants do not dispute they were acting under color of state law, which is a necessary element of any § 1983 claim. *See Bond v. Moore*, No. 7:20-CV-20-REW-MAS, 2023 WL 3451208, at *4 (E.D. Ky. May 9, 2023) (quoting *Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018)).

A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greene*, 22 F.4th at 607. According to Defendants, the relevant "serious medical need" here was Andrews's stroke, or perhaps the risk thereof. The Court agrees.

Here, Andrews's stroke risk was neither diagnosed by a physician nor so obvious a lay person would have recognized it. Andrews had no history of strokes and LCCC staff had no

indication of the stroke until the morning of September 15, when cellmates reported something was wrong with him and he admitted snorting oxycodone. Andrews does not allege he was improperly treated after having the stroke. Rather, his argument is that he should have been on Coumadin (rather than just Paxil and Aspirin) prior to the stroke. No evidence suggests there were warning signs of stroke prior to September 15, 2020. Because Andrews's stroke risk was (prior to the stroke itself) neither diagnosed nor obvious to a lay person, his claim fails on this ground alone. This "objective" component of a deliberate-indifference claim is not met.

Even if Andrews's risk of stroke did qualify as a serious medical need, there is no indication Nurse Hensley intentionally failed to act on it. Again, Andrews had no history of stroke or blood clots. There is no evidence he requested Coumadin while at LCCC. Andrews testified he had been prescribed Coumadin in the past, but he was not prescribed Coumadin in any either of the two jails where he was housed prior to LCCC. D.E. 79-2 at 3. After the stroke, Nurse Hensley had Andrews taken to medical observation, and the situation was complicated by his having snorted oxycodone. Andrews does not allege he was improperly treated *following* the stroke. In other words, there is no evidence that, prior to the stroke, a reasonable officer at the scene (knowing what LCCC knew at the time of the incident) would have understood that Andrews's medical needs subjected him to an excessive risk of harm. Thus, the facts here also fail to establish the second element of a deliberate-indifference claim.

In addition, Jailer Mosley would not be liable to Andrews because Andrews identifies no action Mosley took (or failed to take), which harmed him. Each Defendant must be evaluated individually. *Trozzi*, 29 F.4th at 758 (quoting *Greene*, 22 F.4th at 607). There is no *respondeat superior* in § 1983 cases. "A simple failure to act, without a showing of direct responsibility for the actions of the individual officers, will not suffice to establish supervisory liability. Instead,

7

supervisory liability requires some active unconstitutional behavior on the part of the supervisor."

*Zakora v. Chrisman*, 44 F.4th 452, 475 (6th Cir. 2022) (citations and quotation marks omitted).

> Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citations and quotation marks omitted). Here, there are no facts that would support a finding of active unconstitutional behavior on Mosley's part. No facts suggest Mosley encouraged or directly participated in Andrews's medical treatment at all. Andrews testified the only thing he thinks Mosley did wrong is hiring Hensley. D.E. 79-2 at 12.

Jailer Mosley is additionally entitled to qualified immunity. Qualified immunity shields government officials from liability for their actions unless the officials are on notice that those actions are unlawful. To overcome a claim to qualified immunity, a plaintiff must show that (1) the officer violated a constitutional right and (2) that right was clearly established. *Howell v. NaphCare, Inc.*, 67 F.4th 302, 317 (6th Cir. 2023). For a right to be clearly established, the contours of the right must be sufficiently clear (based on pre-existing law) that a reasonable official would understand that what he is doing violates that right. *Id*. at 318. None of the undisputed facts, interpreted in the light most favorable to Andrews, suggests Mosley violated a clearly established constitutional right. The only allegation against Mosley is that he hired Hensley, which is not a violation of a clearly established constitutional right.

## VI. Andrews's Motion to Dismiss

In June 2023, Andrews moved to dismiss this case without prejudice. D.E. 82. He says that, as a prisoner, he lacks access to medical professionals and legal materials. And he suffers

8

cognitive difficulties. He wishes to pursue the matter after his release. *Id*. Defendants oppose the motion. D.E. 84. Andrews was ordered to reply, but he did not.

Here, the case has been litigated for over 2½ years. The factual record has been developed through jail records and Andrews's deposition testimony. The Court in its discretion declines to grant Andrews's motion to dismiss. *See* Fed. R. Civ. P. 41(a)(2). Dismissal would be prejudicial to Defendants (given their investment in this case), with no obvious benefit to Andrews, given how the facts of the case have been developed. The parties also fail to address the impact of the statute of limitations, which would appear to bar any new action based on Andrews's September 2020 stroke. "Kentucky's statute of limitations for § 1983 actions is one year." *Gardner v. Lexington-Fayette Urb. Cnty. Gov't*, No. 21-5941, 2022 WL 1039608, at *3 (6th Cir. Mar. 9, 2022) (citing *Bonner v. Perry*, 564 F.3d 424, 430-31 (6th Cir. 2009)).

## VII. Conclusion

As Rule 56(c) makes clear, to counter Defendants' motions for judgment, Andrews must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other [such] materials." Fed. R. Civ. P. 56(c)(1)(a). Andrews, having not responded or presented evidence of his own, has cited no such evidentiary materials. The Court is left with no issue of material fact as to whether Defendants were deliberately indifferent to his serious medical needs. Viewing the uncontested facts in the light most favorable to Andrews, he fails to establish all the elements of a deliberate-indifference claim.

The undersigned therefore **RECOMMENDS** that Defendants' unopposed motions for summary judgment (D.E. 78, 79) be **GRANTED**.

**IT IS FURTHER RECOMMENDED THAT** Andrews's motion to dismiss without prejudice (D.E. 82) be **DENIED**.

The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 6th day of September, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge